**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

RAJ BATRA,

     Appellant,

    v.

DEPARTMENT OF VETERANS
 AFFAIRS,

     Agency.

DOCKET NUMBER
SF-1221-15-0674-W-1

DATE: January 11, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Raj Batra</u>, Beverly Hills, California, pro se.

<u>Maureen Ney</u>, Esquire, Los Angeles, California, for the agency.

**BEFORE**

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member
Tristan L. Leavitt, Member

**FINAL ORDER**

¶1  The appellant has filed a petition for review of the initial decision, which denied his request for corrective action in this individual right of action (IRA) appeal. Generally, we grant petitions such as this one only in the following circumstances: the initial decision contains erroneous findings of material fact;

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to clarify the appropriate legal standard by which to evaluate the appellant's communications with the Office of the Inspector General (OIG) and to supplement the administrative judge's contributing factor analysis. We further MODIFY the initial decision to supplement the administrative judge's analysis of whether the agency proved by clear and convincing evidence that it would have suspended the appellant in 2013 and 2015 absent his whistleblowing disclosures and protected activity. We find that the administrative judge correctly determined that the agency met its burden in this regard and properly denied the appellant's request for corrective action. Except as expressly MODIFIED by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2      The relevant background information, as recited in the initial decision, is generally undisputed. Initial Appeal File (IAF), Tab 30, Initial Decision (ID). The appellant began working for the agency in January 1998 as a staff physician. ID at 2. In this capacity, he divided his time performing clinical work (seeing patients) and conducting research. *Id.* The appellant also split his time between the agency and the University of California at Los Angeles (UCLA), whose

receipt of Federal grant funds partially paid his salary. *Id.* When the appellant began working at the agency, he was mentored by Dr. S.D. *Id.*

¶3 Since approximately 2003-2004, the appellant was no longer identified on the Federal grant awarded to UCLA, and he was no longer paid the UCLA portion of his original salary. ID at 3. The appellant believed that Dr. S.D. stole his research identity by usurping research for which the appellant was responsible and receiving millions of dollars of grant funds based on that research. *Id.* The appellant made a hotline call to the agency's OIG in June 2011 concerning improper funding allocation, among other things. ID at 3 (citing IAF, Tab 1 at 27).

¶4 The appellant also complained to various agency management officials about his concerns. ID at 5. For instance, in August 2012, the appellant complained to the Associate Chief of Staff-Research Service that Dr. S.D.'s UCLA salary is "complemented" with his agency salary. ID at 5; IAF, Tab 1 at 23-25. He also complained to the agency's Office of Research Oversight (ORO) regarding the "usurpation of [his] work" and the corruption of the "peer review process," but ORO indicated that such complaints were against UCLA personnel and did not constitute research misconduct. ID at 5; IAF, Tab 1 at 26.

¶5 In May 2013, the Chief of the Medicine Service proposed to suspend the appellant for 14 days based on charges of inappropriate conduct (three specifications), disrespectful conduct (two specifications), and failure to follow instructions (one specification). ID at 6; IAF, Tab 4 at 152-54. The individual who heard the appellant's oral reply, the Assistant Director of the West Los Angeles office, recommended to the deciding official that the suspension be imposed and that the appellant be required to participate in anger management training. ID at 6; IAF, Tab 22 at 10. The Director suspended the appellant for 14 days, effective July 1, 2013. ID at 6; IAF, Tab 4 at 150-51.

¶6 On November 19, 2013, UCLA issued the appellant a notice of exclusion, which barred him from entering or being on campus based on allegations of

"disruptive and aggressive behavior." ID at 6; IAF, Tab 4 at 144-45. On January 22, 2014, UCLA lifted the notice of exclusion after the appellant participated in a threat assessment and met with one of the UCLA deans. ID at 6; IAF, Tab 4 at 123.

¶7 On or around July 2014, the agency convened an Administrative Board of Investigation (ABI) to investigate allegations that led to the appellant's exclusion from UCLA's campus. ID at 6; IAF, Tab 4 at 131-34. On July 22, 2014, the ABI issued a report, which made the following findings: (1) the appellant called Dr. S.D. a "c---sucker"; (2) he called various UCLA personnel "c---suckers"; (3) he made inappropriate physical contact with Dr. H.H.; (4) he verbally threatened Dr. R.R.; and (5) he falsely accused Dr. P.F. without prior clarification. ID at 6; IAF, Tab 4 at 131-34. On July 23, 2014, the appellant sent an email to the agency OIG hotline, in which he appeared to be following up on his 2011 complaint. ID at 10; IAF, Tab 1 at 31-32.

¶8 On or around October 9, 2014, the Chief of Staff concurred with the ABI's findings and forwarded the report to the Chief of the Medicine Service for consideration of possible discipline. ID at 6; IAF, Tab 4 at 130. On November 7, 2014, the Chief of the Medicine Service proposed to suspend the appellant for 14 days based on the five specifications of inappropriate conduct that were sustained by the ABI. ID at 6; IAF, Tab 4 at 127-29.[2] The Associate Director for Administration/Operations concurred with the suspension and recommended that the suspension be imposed. ID at 6-7; IAF, Tab 4 at 60-61. The Acting Director suspended the appellant for 14 days, effective March 1, 2015. ID at 7; IAF, Tab 4 at 58-59.

¶9 On March 6, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC), alleging that the agency suspended him in 2013 and 2015 in retaliation for his complaints to agency management officials and OIG. ID at 7;

---

[2] The same Chief of the Medicine Service served as the proposing official on the 2013 and 2015 suspensions.

IAF, Tab 1 at 14-32.  OSC closed its investigation of his complaint, and he timely filed a Board appeal.  ID at 7; IAF, Tab 1 at 35-36.  The administrative judge found that the appellant established jurisdiction and held a hearing.  IAF, Tab 19; Hearing Transcript (HT).

¶10      In the initial decision, the administrative judge found that the appellant's disclosures to OIG in 2011 and 2014 constituted protected activity as defined in 5 U.S.C. § 2309(b)(9)(C).  ID at 7-8, 10-11; IAF, Tab 1 at 27-29, 31-32.  She also determined that his disclosures to agency management officials, regarding the theft of his research identity[3] and Dr. S.D. being paid by the agency for work when he was not present and working elsewhere, constituted disclosures of a violation of law, but his remaining disclosures to agency managers lacked specificity and detail.  ID at 11-14.  The administrative judge further found that the appellant proved that his correspondence with OIG was a contributing factor in the 2013 suspension but not the 2015 suspension.  ID at 15-17.  She also concluded that the appellant's whistleblowing disclosures to agency management officials were a contributing factor in the 2013 and 2015 suspensions.  ID at 17-18.  The administrative judge found, however, that the agency proved by clear and convincing evidence that it would have suspended the appellant in 2013 and 2015 even if he "had not engaged in whistleblowing."  ID at 18-24.[4]  She therefore denied his request for corrective action.  ID at 24.

¶11      The appellant has filed a 30-page petition for review with more than 300 pages of attachments.  Petition for Review (PFR) File, Tab 4.  The agency has not filed a response.  On review, the appellant essentially challenges the administrative judge's findings and conclusions.  *Id.* at 6-35.  He also appears to

---

[3] The administrative judge reasonably characterized this assertion as a theft of intellectual property.  ID at 12.

[4] For clarity and consistency in this order, we refer to the appellant's correspondence to OIG as protected activity and his disclosures to agency management officials as whistleblowing disclosures.

allege that the agency discriminated against him because of his race. *Id.* at 11, 30.

¶12 The appellant also has filed a motion to submit an additional pleading. PFR File, Tab 6. He proposes to submit the following materials, among others, to assist the Board: (1) the UCLA definition of the "In Resident" Joint Appointment; (2) a copy of the "cooperative agreement" between the agency and UCLA; and (3) "a dialog [sic] that features how the University and [agency] research systems are functionally [intertwined] in a manner that creates inherent conflicts of interest for the [agency] researchers who are not considered part of the University." *Id.* at 3. We deny the motion because we are not persuaded that such additional documentation will assist us in resolving the legal issues that the appellant raised on review. *See* 5 C.F.R. § 1201.115.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶13 The appellant may establish a prima facie case of retaliation for whistleblowing disclosures and/or protected activity by proving by preponderant evidence[5] that: (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D),[6] and (2) the whistleblowing disclosure or protected activity was a contributing factor in the agency's decision to take a personnel action against him. 5 U.S.C. § 1221(e)(1); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015). If the appellant establishes a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence,[7] that it would have taken the same personnel actions in the absence of the whistleblowing

---

[5] Preponderant evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

[6] Section 2302(b)(9)(A), (B), and (D) are not implicated by the facts of this appeal.

[7] Clear and convincing evidence "is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established." 5 C.F.R. § 1209.4(e).

disclosure or protected activity. 5 U.S.C. § 1221(e)(1)-(2); *Webb*, 122 M.S.P.R. 248, ¶ 16.

## We agree with the administrative judge that the appellant made whistleblowing disclosures and engaged in protected activity.

¶14      The appellant does not challenge the administrative judge's conclusion that he engaged in protected activity when he communicated with OIG and he made whistleblowing disclosures to agency management officials regarding the theft of his research identity and Dr. S.D. being paid by the agency for work when he was not present and working elsewhere. We affirm those conclusions herein.

¶15      The appellant challenges on review the administrative judge's conclusion that the following three disclosures to agency management officials lacked specificity and detail and were not protected under 5 U.S.C. § 2302(b)(8): (1) that agency funds and benefits were being diverted to UCLA; (2) that Dr. S.D. was diverting agency resources to UCLA; and (3) that Dr. S.D. was taking credit at UCLA for work performed at the agency. PFR File, Tab 4 at 14-19; ID at 11-13. In reaching this conclusion, the administrative judge noted, among other things, that the appellant failed to provide sufficient factual context for these allegations, the agency and UCLA have an arrangement to share resources, and the appellant did not identify any law, rule, or regulation that the agency violated, nor did these allegations clearly implicate an identifiable violation of law, rule, or regulation. ID at 12-13. She further found that these allegations did not constitute preponderant evidence of an abuse of authority, gross mismanagement, or a gross waste of funds by agency officials. ID at 13.[8]

---

[8] In the initial decision, the administrative judge made two references to the appellant's burden to make nonfrivolous allegations. ID at 8-9, 13-14. We assume that these references were misstatements because she previously determined that the appellant satisfied his burden to make nonfrivolous allegations of Board jurisdiction and a hearing was held, IAF, Tab 19, and she correctly noted the proper burden of proof at the merits stage, ID at 9; *see, e.g.*, *Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (explaining that an adjudicatory error that is not prejudicial to the appellant's substantive rights provides no basis for reversal of the initial decision).

¶16    To remedy these deficiencies, the appellant discusses on review his research expertise, the nature of the cooperative research agreement between the agency and UCLA, and the impact of the agency's decision to exclude him from various funding applications (including the disparity of salary support between him and Dr. S.D. and the professional opportunities that he was denied).  PFR File, Tab 4 at 14-18.  We have considered this information as well as his assertion that because Dr. S.D. was on various "regulatory panels with falsified credentials (that belonged to [the appellant])," he was able to steer "many additional hundreds of millions of dollars . . . towards dead-end medical research projects, and/or killed others (like [the appellant's]) that . . . had significant promise," which in turn "harmed the American public."  *Id.* at 18.  However, we are not persuaded that this additional information provides sufficient detail to constitute a disclosure of a violation of law, rule, or regulation or any other category protected by 5 U.S.C. § 2302(b)(8).  Therefore, we affirm the administrative judge's conclusion that these disclosures are not protected.

¶17    Although not raised by the appellant on review, we modify the initial decision to clarify the proper analytical standard by which to evaluate the appellant's communications with OIG.  The administrative judge acknowledged that the appellant's communications to OIG are covered by 5 U.S.C. § 2302(b)(9)(C), which makes it a prohibited personnel practice to take or fail to take a personnel action against an employee because of "disclosing information to the Inspector General of an agency."  ID at 10-11.  However, in the initial decision, she also referenced the standard for general retaliation claims.  ID at 7-8, 10-11 (citing *Murry v. General Services Administration*, 93 M.S.P.R. 560, ¶ 6 (2003), for the proposition that the appellant must show that he engaged in protected activity, the accused official knew of the protected activity, the adverse employment action could have been retaliation under the circumstances, and there was a genuine nexus between the alleged retaliation and the adverse employment action).  In *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 15 (2015), the

Board clarified that the standard for general retaliation claims is inapplicable to claims that are subject to the burden-shifting framework set forth in 5 U.S.C. § 1221(e). As noted above, the appellant's communications to OIG are covered by 5 U.S.C. § 2302(b)(9)(C), and they are subject to the burden-shifting framework set forth in 5 U.S.C. § 1221(e). *See* 5 U.S.C. § 1221(e)(1)-(2). We therefore modify the administrative judge's analysis, and we find that the appellant's communications with OIG in 2011 and 2014 constitute protected activity under section 2302(b)(9)(C).[9]

We modify the administrative judge's contributing factor analysis, but we agree with her conclusion that the appellant proved by preponderant evidence that his whistleblowing disclosures and/or protected activity was a contributing factor in the agency's decision to suspend him in 2013 and 2015.

¶18      One way of proving that the appellant's whistleblowing disclosures and/or protected activity was a contributing factor in the personnel action is the "knowledge/timing test." *Alarid*, 122 M.S.P.R. 600, ¶ 13 (citing *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 (2013)). The knowledge/timing test allows an employee to demonstrate that the whistleblowing disclosure and/or protected activity was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking

[9] On review, the appellant indicates that he "reach[ed] out to [a] Congressional representative," and he includes correspondence to various Congressional representatives. PFR File, Tab 4 at 22, 159-60, 169-70. He also provides evidence that he filed with OSC a whistleblowing disclosure in late 2013 or early 2014, PFR File, Tab 4 at 150-152, as well as an earlier prohibited personnel practice complaint in 2013, for which he received a preliminary closure letter on September 6, 2013, PFR File, Tab 4 at 146-49. He did not provide this information below, and the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). The appellant has not made such a showing here. Moreover, this additional information would not change our analysis based on our finding that, although the appellant made whistleblowing disclosures and engaged in protected activity, as the administrative judge found, the agency proved by clear and convincing evidence that it would have suspended the appellant in 2013 and 2015 absent his whistleblowing disclosures and protected activity.

the personnel action knew of the whistleblowing disclosure and/or protected activity and that the personnel action occurred within a period of time such that a reasonable person could conclude that the whistleblowing disclosure and/or protected activity was a contributing factor in the personnel action. *Alarid*, 122 M.S.P.R. 600, ¶ 13; *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 11 (2003); *see* 5 U.S.C. § 1221(e)(1).

¶19        The administrative judge found that the appellant proved that his whistleblowing disclosures and protected activity were contributing factors in the agency's decision to suspend him in 2013 and 2015. ID at 15-18. The administrative judge found that the concurring official was the only individual involved in the 2013 suspension that had knowledge of his communications with OIG, but he only knew about the appellant's general complaints regarding Dr. S.D. and research transgressions. ID at 15-18. Regarding the 2015 suspension, the administrative judge found that the proposing official and the Chief of Staff who concurred in the ABI's recommendation had some knowledge that the appellant disclosed to agency management officials that Dr. S.D. stole his research identity and/or was improperly paid for time worked at the agency. ID at 17.[10]

---

[10] The administrative judge's contributing factor analysis is confusing due, in part, to the lack of clarity in the record regarding to whom, and when, the appellant made whistleblowing disclosures and when the various agency officials involved in the 2013 and 2015 suspensions had knowledge of such disclosures. *E.g.*, ID at 17 (noting that it was "not entirely clear" when the proposing official had knowledge of the appellant's disclosures to agency management officials). The administrative judge's confusion is somewhat understandable because the appellant's submissions do not clearly articulate such information. For instance, he included with his OSC complaint his correspondence with the Associate Chief of Staff-Research Service and the agency's Office of Research Oversight as discussed *supra* ¶ 4. However, it appears that the appellant informed other agency management officials of his concerns regarding theft of intellectual property and improper payments to Dr. S.D. *E.g.*, IAF, Tab 17 at 30-31 (the Chief of the Medicine Service acknowledged in his deposition that he knew of the appellant's allegation that Dr. S.D. stole his intellectual property and received credit for his work), Tab 22 at 64 (stating in a February 1, 2012 email to the Chief of Staff that his "contributions have been usurped and misappropriated" and his "research identity

¶20    We modify the initial decision to find that additional agency officials involved in the 2013 and 2015 suspension actions had knowledge of the appellant's whistleblowing disclosures and/or protected activity, but we agree with the administrative judge's overall conclusion that the appellant proved contributing factor for each suspension. For instance, we have considered the appellant's assertion that the proposing official knew about his complaints to OIG and agency managers. PFR File, Tab 4 at 12, 19. On review, the appellant includes a May 24, 2013 email, which he sent to the proposing official and the Chief of Staff, who concurred with the ABI recommendation, among others. *Id.* at 60. Included with this email was his response to the 2013 notice of proposed suspension, which was already in the record below. *Id.* at 61-66; IAF, Tab 22 at 36-41. In his response to the notice of proposed suspension, he stated that he "began raising concerns with Federal Agencies (see 2011 VA-[Tech Transfer Office (TTO)] and VA-OIG communications)."[11] IAF, Tab 22 at 38. The proposing official testified that he did not know that the appellant went to OIG until June or July 2015. HT at 79-80, 89 (testimony of G.B.). However, as one of the recipients of the appellant's May 24, 2013 email, we find that he had knowledge of the appellant's communication with OIG on or around this date. We also conclude that the Chief of Staff, as a recipient of the May 24, 2013 email, had knowledge of the appellant's communications with OIG. We modify the initial decision accordingly. The record also reflects that the Chief of Staff

---

stolen"); HT at 142 (testimony of the Chief of Staff acknowledging that the appellant raised the issue of whether Dr. S.D. was committing fraud by getting paid by the agency when he was not working at the agency). We cannot discern whether such communications are intended to constitute additional whistleblowing disclosures in this IRA appeal. The lack of clarity in the record regarding to whom and when the appellant made whistleblowing disclosures does not require further development of the record because the existing voluminous record is sufficient to address the numerous arguments raised by the appellant on review.

[11] According to the appellant, the TTO is the agency's Office of Intellectual Property. HT at 21 (testimony of the appellant).

concurred with the ABI's findings on or around October 9, 2014, and the Chief of the Medicine Service proposed the second suspension on November 17, 2014. IAF, Tab 4 at 127. The Board has held that a personnel action taken within approximately 1-2 years of the whistleblowing disclosure(s) or protected activity satisfies the knowledge/timing test. *Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 21 (2015). We further modify the initial decision to find that the appellant's communication with OIG was a contributing factor in the decision to propose the 2015 suspension.[12]

¶21　　　The appellant further contends that the concurring officials on the 2013 and 2015 suspensions did not appreciate the magnitude of the issues that he was raising in his responses to the proposed agency actions. PFR File, Tab 4 at 21. We understand this argument to mean that he informed these officials through his oral and written replies that he had made disclosures to agency management officials, but they failed to recognize the context of his assertions.

¶22　　　The concurring official on the 2013 suspension testified that he had no knowledge of any complaints that the appellant made to agency management officials. HT at 120 (testimony of C.S.). However, he acknowledged that he read the appellant's response to the notice of proposed suspension, which stated the appellant's belief that Dr. S.D. intended "to steal [his] intellectual property by claiming it as his own," that funds were "absconded" from his accounts and redistributed elsewhere to Dr. S.D.'s benefit, and that he began raising concerns with "Federal Agencies (see [agency]-TTO and [agency]-OIG communications)." *Id.* at 120-24; IAF, Tab 22 at 37-38. The appellant's response further indicated that he had raised with the proposing official and other agency management officials issues concerning his research environment and laboratory privileges, and he stated that the proposing official's actions were retaliatory. IAF, Tab 22

---

[12] We are not persuaded that the proposing official had any knowledge of the appellant's communications with OIG prior to his decision to propose the 2013 suspension.

at 40. Viewing the appellant's response as a whole, we find that the concurring official had some knowledge of the appellant's substantive whistleblowing disclosures to agency management officials. We modify the initial decision accordingly. Here, too, the 1-month span of time between the appellant's May 24, 2013 response to the notice of proposed suspension and the June 20, 2013 recommendation that the proposal should be sustained, IAF, Tab 22 at 10, was sufficiently short to satisfy the timing component of the knowledge/timing test. *See DeLeonardo v. Equal Employment Opportunity Commission*, 103 M.S.P.R. 301, ¶ 10 (2006) (finding that a performance evaluation issued 1 month after a disclosure was made satisfied the knowledge/timing test).

¶23    By contrast, we are not persuaded that the concurring official on the 2015 suspension had any knowledge of the appellant's whistleblowing disclosures or protected activity. Indeed, the concurring official on the 2015 suspension denied having any such knowledge, and the documentary evidence supports her testimony. HT at 162-63 (testimony of S.S.). Importantly, in the appellant's written response to the proposed suspension, he discussed his personal conflicts with Dr. S.D. and the proposing official and his feeling that he was "betrayed" by Dr. S.D., but he does not at any time discuss the substance of his whistleblowing disclosures or his complaints to OIG. IAF, Tab 4 at 62-126.

¶24    Because we conclude that the appellant satisfied his prima facie burden to show that his whistleblowing disclosures and/or protected activity was a contributing factor in the agency's decision to suspend him in 2013 and 2015, we now turn to whether the agency proved by clear and convincing evidence that it would have suspended him absent his whistleblowing disclosures or protected activity.

> We agree with the administrative judge that the agency proved by clear and convincing evidence that it would have suspended the appellant in 2013 and 2015 absent his whistleblowing disclosures or protected activity.[13]

¶25     In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action absent whistleblowing disclosures and/or protected activity, the Board will consider the strength of the agency's evidence in support of its action, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision, and any evidence that the agency takes similar actions against employees who are not whistleblowers or who did not engage in protected activity but who are otherwise similarly situated. *See Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶26     The administrative judge assessed the relevant evidence, made credibility determinations, and concluded that the agency had "legitimate reasons" to suspend the appellant in 2013 and 2015. ID at 19-23. Regarding the agency's motive to retaliate, the administrative judge acknowledged the appellant's assertion that the charges were fabricated because the Chief of the Medicine Service and other agency management officials "favored" Dr. S.D., but she concluded that this argument was not persuasive. ID at 23-24. The administrative judge noted that the third *Carr* factor was not significant because the record did not contain any evidence to show that the agency took similar actions against employees who did not make whistleblowing disclosures or

---

[13] In the administrative judge's clear and convincing analysis, she stated that she would "accept as true that the appellant's protected disclosures were a contributing factor in the decision to remove him." ID at 18. We assume that this statement was a typographical error because she previously found, as noted above, that the appellant proved by preponderant evidence he made whistleblowing disclosures and engaged in protected activity and such disclosures and activity were a contributing factor in the agency's decision to impose the 2013 and 2015 suspensions. ID at 10-18.

did not engage in protected activity but who were otherwise similarly situated. ID at 24 & n.5.[14]

¶27 The appellant admitted to most of the misconduct underlying the 2013 suspension, including calling another employee "inept," failing to meet with the Chief of the Medicine Service as directed, and, during a different meeting with the Chief of the Medicine Service, raising his voice, pounding his fist on the table, and slamming the door behind him. *E.g.*, IAF, Tab 22 at 36-41; HT at 54-56 (testimony of the appellant). He contends on review, however, that the Chief of the Medicine Service (who was also the proposing official) provoked him by calling him a liar and dismissing his complaint with the UCLA Academic Senate regarding his allegations against Dr. S.D. PFR File, Tab 4 at 14. Even if the appellant's allegations of provocation were true, it would not change our view of the strength of the agency's evidence concerning the specifications that involved other employees, and they do not explain his otherwise inappropriate and unprofessional behavior described in the specifications involving the Chief of the Medicine Service.

¶28 Regarding the 2015 suspension, the appellant asserts on review that the underlying specifications "largely occurred off-site in 2013." PFR File, Tab 4 at 23. The administrative judge addressed this argument in the initial decision, noting that the delay was due to the agency's decision to convene an independent ABI, which sustained the misconduct and provided written recommendations in July 2014. ID at 22-23; IAF, Tab 4 at 131-34. The appellant has not persuaded us that the administrative judge erred when she concluded that the delay did not harm him or alter the facts surrounding the alleged misconduct. ID at 22-23.

¶29 We have considered the appellant's arguments regarding some of the specifications of the inappropriate conduct charge, but we find that a different

---

[14] The administrative judge acknowledged that one witness testified that other physicians who were not whistleblowers have been suspended; however, she noted that the particular misconduct was not identified. ID at 24 & n.5.

outcome is not warranted. For instance, the appellant argues on review that his use of vulgar language to describe Dr. S.D. and UCLA personnel was "jovial and impulsive" and not out of anger. PFR File, Tab 4 at 24 (emphasis omitted). This argument is inconsistent with his admission that it was not appropriate to use such vulgarity in the agency hospital and that he viewed Dr. S.D. "in this light." IAF, Tab 4 at 69-70; PFR File, Tab 4 at 24 (emphasis omitted). Additionally, the appellant asserts that he never hit Dr. H.H., PFR File, Tab 4 at 24, but he acknowledged in his response to the notice of proposed suspension that he "patted [Dr. H.H.'s] shoulder," IAF, Tab 4 at 70. The appellant's version of events is contradicted by an email written by Dr. H.H. on the same day as the incident in question, which described that the appellant hit him "very hard." *Id.* at 137. The appellant admitted below that he had a confrontation with Dr. R.R. because he reacted to Dr. R.R.'s "open disrespect[]" for him in front of faculty and students. *Id.* at 71, 126. Additionally, on review, he admits that he "informed [Dr. R.R.] in measured tones that if he disrespected [the appellant] again in a public forum, that there would be consequences." PFR File, Tab 4 at 24 (emphasis in original). Given the appellant's admissions, we agree with the administrative judge that the agency's evidence to support the 2013 and 2015 suspensions was very strong.

¶30 Because we have modified the initial decision to find that additional individuals had knowledge of the appellant's whistleblowing disclosures and/or protected activity, we also modify the administrative judge's evaluation of the second *Carr* factor, concerning the agency's motive to retaliate. The appellant asserts on review that he was "raising very significant issues regarding executive integrity and fiscal impropriety that directly implicated high level [agency] and [UCLA] officials [and accused them] of incompetence and corruption." *Id.* at 13. We agree. Given the serious nature of the appellant's allegations to agency management officials and OIG, coupled with the positions of authority occupied by the individuals who were involved in the decision-making process concerning

the two suspensions,[15] we find that this *Carr* factor favors the appellant. *See, e.g.*, *Whitmore v. Department of Labor*, 680 F.3d 1353, 1370 (Fed. Cir. 2012) ("Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as managers and employees.").

¶31    The appellant also asserts that the decision to convene the ABI was improper, the ABI was presented with a "pre-determined narrative," it did not properly consider the evidence before it, and its conclusion that his research activities should be curtailed is inconsistent with the charged offenses. PFR File, Tab 4 at 26-27.  We find these arguments unavailing.  Indeed, there is no persuasive evidence that any agency management official with knowledge of his whistleblowing disclosures and/or protected activity influenced anyone on the ABI, nor is there any evidence that any ABI members acted in retaliation for his whistleblowing disclosures and/or protected activity.

¶32    Regarding the third *Carr* factor, the appellant contends that the administrative judge "discount[ed]" the testimony of the deciding official on the 2013 suspension that "no physician was suspended without pay for weeks for raising their voices, complaining about staff ineptitude, using vulgarities, or asserting rights" that the appellant believed were in the agency's best interests. *Id.* at 7 (emphasis omitted), 20-21.  The appellant does not provide a citation to this testimony, and we could not independently find it.  Based on our review of the initial decision and the relevant evidence, however, it appears that there is little, if any, evidence, to support this factor.  To the extent evidence on *Carr* factor 3 exists, the agency is required to come forward with all reasonably

---

[15] We also include in our consideration the Chief of Staff, even though he was not a proposing, concurring, or deciding official in either of the suspensions, because he concurred with the ABI's findings and forwarded those findings to the Chief of the Medicine Service.  IAF, Tab 4 at 130.

pertinent evidence; the failure to do so may be at the agency's peril. *Whitmore*, 680 F.3d at 1374. Absent relevant comparator evidence, *Carr* factor 3 cannot weigh in favor of the Government. *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018). We find, therefore, that *Carr* factor 3 weighs against the agency.

¶33　　　The court has also held that the *Carr* factors are "nonexclusive." *Miller v. Department of Justice*, 842 F.3d 1252, 1257 (Fed. Cir. 2016). Therefore, we have considered other evidence discussed by the appellant on review, including, among other things, the frequency with which he raised concerns to agency officials, the "negligence (inaction)" of agency officials starting in 2004-2005, the harm done to his career and personal life as a consequence of his communications with OIG and agency management officials, the relationship between the agency and UCLA, and the complex personnel issues that arose as a result of this relationship. *E.g.*, PFR File, Tab 4 at 9-18, 22-35. However, given the serious nature of the charged misconduct and the appellant's admission that he engaged in most of the charged misconduct, we are left with a strong belief that the agency would have suspended the appellant in 2013 and 2015 absent his whistleblowing disclosures and protected activity. *See Carr*, 185 F.3d at 1326 (noting that the whistleblower protection statutes are not meant to protect employees from their own misconduct).

The appellant's other arguments on review do not warrant a different outcome.

¶34　　　We have considered the appellant's remaining arguments, but we find them unavailing. For instance, regarding his assertion that the agency's actions were the product of race discrimination, *e.g.*, PFR File, Tab 4 at 11, the Board lacks the authority to decide, in conjunction with an IRA appeal, the merits of an allegation of prohibited discrimination, *Fishbein v. Department of Health & Human Services*, 102 M.S.P.R. 4, ¶ 18 (2006).

¶35　　　We also have reviewed the 300 pages of documentation that the appellant submitted on review. Many of these documents, such as email correspondence

between him and the Chief of the Medicine Service and between him and OIG, his written response to the 2013 notice of proposed suspension, and his formal complaint of faculty misconduct against Dr. S.D. that he sent to the UCLA Academic Senate, *e.g.*, PFR File, Tab 4 at 55-56, 61-66, 71-73, 96-134, are not new evidence because they were already part of the record below, *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980). As to the remaining documents, the Board generally will not consider evidence submitted for the first time with the petition for review absent a showing that it was unavailable before the record was closed despite the party's due diligence. *Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980). The appellant has not made such a showing. Even if we assumed for the purposes of our analysis that the appellant included "new" evidence on review, we are not persuaded that such evidence is of sufficient weight to warrant an outcome different from that of the initial decision. *Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980).

Conclusion

¶36     For the reasons described herein, we find that the appellant proved that he made whistleblowing disclosures and engaged in protected activity and that these whistleblowing disclosures and protected activity were a contributing factor in the agency's decision to suspend him in 2013 and 2015. We further find that the agency proved by clear and convincing evidence that it would have suspended the appellant in the absence of his whistleblowing disclosures or protected activity. Therefore, we deny the appellant's request for corrective action.

## NOTICE OF APPEAL RIGHTS[16]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain

---

[16] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. \_\_\_\_ , 137 S. Ct. 1975 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court

of appeals of competent jurisdiction.[17]  The court of appeals must <u>receive</u> your petition for review within **60 days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[17] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.


FOR THE BOARD:          /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.